UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Glen Lake Sales & Marketing, Inc.,

Plaintiff,

v.

Civ. No. 01-1582 (JNE/JGL)
ORDER

Mott's Inc.,

Defendant.

---

Michael D. Schwartz, Esq., and Andrew A. Dean, Esq., Schwartz, Stottler & Dean, P.A., appeared for Plaintiff Glen Lake Sales & Marketing, Inc.

Laura A. Brenner, Esq., Reinhart Boerner Van Deuren, s.c., and Gregory E. Karpenko, Esq., Fredrikson & Byron, P.A., appeared for Defendant Mott's Inc.

---

This is an action for breach of contract brought by Glen Lake Sales & Marketing, Inc. (Glen Lake) against Mott's Inc. (Mott's). The case is before the Court on Mott's Motion for Summary Judgment. For the reasons given below, the Court grants the motion.

## I. BACKGROUND

In 1984, Mott's entered into a standard sales-broker contract with Glen Lake's predecessor in which the predecessor agreed to promote Mott's cocktail mixers to distributors and retailers. Mott's and Glen Lake have since modified the contract, and their most recent agreement (the Contract) became effective in January 1990. (Schwartz Aff. Ex. A.)

The Contract opens with a statement of objectives, which provides in part:

> This [Contract] has been designed to establish a principal/broker relationship which is based on trust, and which encourages and fosters a long-term partnership. To achieve these objectives, Mott's . . . is prepared to commit itself to work with [Glen Lake] on a management-by-objective basis which is developed and agreed to in advance by both parties. This [Contract] will enable [Glen Lake] to commit to long-range planning and to commit resources to the sale of Mott's . . . products.

FILED JUL 2 2 2003
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTERED JUL 2 2 2003
DEPUTY CLERK'S INITIALS

(Contract ¶ 1.) The Contract's duration was linked to a schedule of four-week financial periods established by Mott's. The Contract provided that, after an initial four-week period, the Contract would be "automatically renewed for successive periods unless either party notifies the other in writing that [the Contract] shall not be renewed at least thirty (30) days prior to the expiration of a financial period." (*Id.* ¶ 6.a.) Other provisions required Mott's to make a severance payment to Glen Lake in the event of the Contract's termination by Mott's, (*id.* ¶ 6.b), detailed the circumstances under which Mott's could terminate the Contract without making a severance payment, (*id.* ¶ 6.c), and gave Glen Lake the right to terminate the Contract "at any time, with or without cause," by providing Mott's with written notice thirty days in advance, (*id.* ¶ 6.d).

In a letter dated May 18, 2001, Mott's notified Glen Lake that it did not intend to renew the Contract, and that the Contract would therefore expire on August 16, 2001, the end of the next four-week period. (Schwartz Aff. Ex. C.) Glen Lake sued Mott's on August 27, 2001, alleging that Mott's breached the Contract by terminating it without good cause, and that it violated the implied contractual duty of good faith and fair dealing.[1]

## II. DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion" and must identify "those portions of [the record] which it believes

---

[1] Glen Lake's Complaint contains other breach of contract theories, as well. Mott's moved for summary judgment on those theories, arguing that there is no evidence in the record to support them. In responding to the motion, Glen Lake failed to submit any evidence in support of the theories. The Court therefore grants summary judgment for Mott's on those theories.

demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the nonmoving party to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The law of Connecticut governs the interpretation and enforcement of the Contract. (Contract ¶ 11). Under Connecticut law, the interpretation of an unambiguous contract is a question of law. *Tallmadge Bros. v. Iroquois Gas Transmission Sys., L.P.*, 746 A.2d 1277, 1287 (Conn. 2000). "In determining whether a contract is ambiguous, the words of the contract must be given their natural and ordinary meaning. A contract is unambiguous when its language is clear and conveys a definite and precise intent." *United Illuminating Co. v. Wisvest-Connecticut, LLC*, 791 A.2d 546, 549-50 (Conn. 2002) (citations omitted). A contract is ambiguous, on the other hand, "if the intent of the parties is not clear and certain from the language of the contract itself" and "the contract is susceptible to more than one reasonable interpretation." *Id.* at 550.

The Court concludes that the language governing the duration of the Contract is unambiguous. The Contract provides for automatic renewal unless either party gives written notice at least thirty days before the end of a four-week period. (Contract ¶ 6.a.) The clear intent of that provision is to allow the Contract to remain in effect until either party provides written notice that the Contract will not be renewed. The provision does not require that the party have good cause for doing so.

Glen Lake acknowledges that the language of the renewal provision itself does not require cause. It argues that other provisions of the Contract, when read together with the renewal provision, impose such a requirement. Glen Lake correctly asserts that the Contract "must be viewed in its entirety, with each provision read in light of other provisions, and every provision must be given effect if it is possible to do so." *United Illuminating*, 791 A.2d at 550. Read as a whole, though, the Contract does not support the interpretations Glen Lake proposes.

According to Glen Lake, the Contract's objectives of encouraging a "long-term partnership" and allowing Glen Lake to "commit to long-range planning," (Contract ¶ 1), foreclose the possibility of nonrenewal without cause. The Court rejects this reading because the language relied upon by Glen Lake is merely precatory. The objectives expressed in that provision say nothing about what the precise duration of the Contract will be. Furthermore, the automatic renewal of the Contract for an indefinite period is consistent with the objectives stated in the provision, and achieving those objectives does not require reading a cause requirement into the Contract.

Glen Lake also relies on the difference between the provision allowing Glen Lake to terminate the Contract "at any time, with or without cause," (*id.* ¶ 6d), and the provisions that set forth Mott's right to terminate the Contract, which are silent as to whether cause is required, (*see id.* ¶ 6b-6c). According to Glen Lake, this silence should be interpreted as requiring cause. Glen Lake's argument confuses the concept of "termination" of the Contract, which could occur at any time, with a decision not to renew the Contract, which could only take effect at the end of a four-week period. The termination provisions have no bearing upon the Contract's renewal provision.

Glen Lake's final argument is that Mott's violated the duty of good faith and fair dealing, implied in every contract under Connecticut law, *Macomber v. Travelers Prop. & Cas. Corp.*,

804 A.2d 180, 192 (Conn. 2002), by acting contrary to Glen Lake's justified expectation that the Contract would continue to renew. The Court rejects Glen Lake's argument because a party may not invoke the duty of good faith and fair dealing "to achieve a result contrary to the clearly expressed terms of a contract." *Magnon v. Anaconda Indus., Inc.*, 479 A.2d 781, 786 (Conn. 1984). Mott's acted in accordance with the clear and unambiguous provisions of the Contract. The duty of good faith and fair dealing required no more.

## III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Mott's Motion for Summary Judgment [Docket No. 20] is GRANTED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: July 21, 2003

JOAN N. ERICKSEN
United States District Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information <u>must</u> be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*